IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STACEY A. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 3596 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES, f/k/a Illinois Department of | ) | |
| Mental Health; MICHAEL JANKOWSKI, | ) | |
| CHRISTINE HAMMOND, and JERI GULLI | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Stacey A. Coleman ("Coleman") filed a four count discrimination complaint against her former employer, the Illinois Department of Human Services ("IDHS"), as well as her former supervisors, Michael Jankowski ("Jankowski"), Christine Hammond ("Hammond"), and Jeri Gulli ("Gulli") (collectively, "defendants").[1] Counts I and II of Coleman's first amended complaint allege that defendants singled out Coleman for disparate treatment, discipline, suspension, and termination based on Coleman's race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981. Count III alleges that defendants deprived Coleman of equal protection under the law in violation of 42 U.S.C. § 1983. Count IV alleges that defendants violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, by interfering with and retaliating against Coleman when she attempted to take leave under the act. Before the court is Defendants' motion to dismiss

---

[1] The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4). Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events giving rise to Coleman's claims occurred in this District.

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [#40] is granted in part and denied in part.

## BACKGROUND

The following facts are taken from the first amended complaint and are presumed to be true for the purpose of resolving the pending motion.

Coleman, who is African-American, began working for the IDHS in 1998 as a support service worker at the Howe Development Center in Tinley Park, Illinois. Amend. Compl. ¶ 11. In 2006, Coleman's daughter became seriously ill. *Id.* ¶ 12. As a result, Coleman was absent from or late to work a number of times. *Id.* IDHS held a pre-disciplinary hearing with Coleman about her absences and tardiness, during which Hammond explained the FMLA to Coleman and Coleman informed Hammond that she would need FMLA leave to care for her daughter. *Id.* ¶¶ 13-14. Hammond further explained to Coleman that once she turned in the necessary paperwork, her prior absences and tardiness would be excused by back-dating them as FMLA leave, and all future FMLA leave would be approved. *Id.* ¶ 15. Coleman submitted the required FMLA paperwork to Gulli, but Gulli took approximately one month to approve her leave. *Id.* ¶ 18. Gulli routinely approved Caucasian employees' paperwork in a few days. *Id.* Furthermore, IDHS required Coleman to bring in documentation proving her need for FMLA leave, which it did not require of Caucasian employees. *Id.* ¶ 20. Later, IDHS reversed some of Coleman's approved absences and tardiness, causing them to be listed on her employment record. *Id.* ¶¶ 21. IDHS regularly reversed approved absences and tardiness of African-American employees but did not engage in this practice with respect to Caucasian employees. *Id.* ¶ 22.

On another occasion in 2006, Coleman missed work because her mother was hospitalized and subsequently required at-home care. *Id.* ¶ 23. Coleman verbally informed Hammond that she would need to take FMLA leave, and he assured her that any prior absences would be back-dated as approved FMLA leave. *Id.* ¶¶ 24-25. Coleman submitted the necessary paperwork on September 12, 2006, Gulli approved the leave approximately two months later, and the absences were back-dated. *Id.* ¶¶ 26-27. Again, IDHS required documentary proof from Coleman and later reversed some of the approved absences and tardiness, causing them to appear on her employment record. *Id.* ¶¶ 30-31.

Between February and April 2007, Coleman took approximately nine days of FMLA leave to care for her own medical conditions. *Id.* ¶¶ 33-35. She verbally notified Hammond in February of her intention to take FMLA leave, and Hammond told her that she could file her paperwork later and that her absences would be back-dated and approved. *Id.* ¶ 34. Accordingly, Coleman did not file the necessary paperwork at that time. *Id.* ¶¶ 33-39. On April 10, 2007, IDHS held a pre-disciplinary hearing with Hammond regarding her unexcused absences between February and April. *Id.* ¶ 37. After the hearing in April, Coleman filed the FMLA paperwork. *Id.* ¶ 42. As before, IDHS required Coleman to document her need for FMLA leave. *Id.* ¶ 44. Gulli failed to process Coleman's paperwork and back-date her absences but did process Caucasian employees' paperwork. *Id.* ¶¶ 43, 46.

On May 21, 2007, IDHS suspended Coleman for abuse of time. *Id.* ¶ 45. On June 20, IDHS fired her. *Id.* ¶ 47. At a July 16 grievance resolution hearing, IDHS offered to purge Coleman's personal file if she agreed to resign. *Id.* ¶ 48.

Coleman filed a discrimination charge on October 2, 2007 with the Illinois Department of Human Rights, which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 50-51. On April 6, 2010, the Illinois Department of Human Rights dismissed the charge for lack of substantial evidence. *Id.* ¶ 52. The EEOC issued a notice of right to sue on May 6, 2010. *Id.* ¶ 53. The original *pro se* complaint in this suit was filed June 15, 2009.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). The court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 586 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.,* --- F.3d ----, 2010 WL 3385191 at *1 (7th Cir. Aug. 30, 2010). Rather, it is the facts that count.

## DISCUSSION

Defendants' motion to dismiss challenges the following allegations: Title VII claims against Gulli, Hammond, and Jankowski as individuals, Title VII claims against IDHS regarding events that took place in 2006, §§ 1981 and 1983 claims against IDHS, and §§ 1981 and 1983

4

claims against Gulli, Hammond, and Jankowski involving violations that took place before June 15, 2007.[2]

Coleman concedes that dismissal is appropriate for all claims challenged in the motion, except for her §§ 1981 and 1983 claims against the individual defendants that relate to the events that occurred prior to June 15, 2007. Pl.'s Resp. at 1. Defendants assert that these claims should be dismissed because they are time-barred under a two year statute of limitations. Def.'s Mot. to Dismiss at 6. Coleman argues that the continuing violation doctrine links the acts that took place prior to June 15, 2007 to those acts that give rise to a claim within the statute of limitations. Pl.'s Resp. at 2. Therefore the only issue presently before the court is whether a subset of Coleman's §§ 1981 and 1983 claims against Gulli, Hammond, and Jankowski are time-barred.

I.   **The statute of limitations for Coleman's § 1981 claims is four years.**

In the Seventh Circuit, the statute of limitations for employment discrimination claims under § 1981 is four years. *See Dandy* v. *United Parcel Serv. Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) (citing *Jones* v. *R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)); *Gupta* v. *Madison Metropolitan School District*, 120 F. App'x 641, 643 (7th Cir. 2005) (applying the four year statute of limitations required by *Donnelley* to a § 1981 claim of wrongful discharge). Defendants cite *Ashafa* v. *City of Chicago,* 146 F.3d 459, 461 (7th Cir. 1998), in support of a two year statute of limitations for both § 1981 and § 1983 claims. Def.'s Mot. to Dismiss at 6. In *Ashafa*, however, the court only addresses § 1983 claims. 146 F.3d at 461. Coleman filed her original *pro se* complaint on June 15, 2009. Compl. at 1. Because there

---

[2] Defendants did not attack in this motion the Title VII claims against IDHS related to events after 2006, §§ 1981 and 1983 claims against Gulli, Hammond, and Jankowski related to events after June 15, 2007, and the alleged violations of FMLA. Accordingly, the court will not consider those claims here.

is a four year statute of limitations for claims of employment discrimination under § 1981 and all of the acts alleged in the complaint occurred after June 15, 2005, none of Coleman's claims against Gulli, Hammond, and Jankowski under § 1981 are time-barred.

II. **The continuing violation doctrine does not apply to the alleged violations of § 1983 that occurred prior to June 15, 2007.**

The statute of limitations for a § 1983 claim is two years. *See Walker* v. *Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) (citing *Ashafa*, 146 F.3d at 461). Claims relating to violations of Coleman's rights under § 1983 that took place before June 15, 2007 are therefore time-barred. Coleman argues that the court should nevertheless consider these allegations, because the continuing violation doctrine links events that occurred prior to June 15, 2007 to Coleman's termination on June 20, 2007. Pl.'s Resp. at 2. Her argument misapplies the doctrine.

The continuing violation doctrine allows a suit to be delayed "until a series of wrongful acts blossoms into an injury on which suit can be brought." *Limestone Dev. Corp.* v. *Vill. of Lamont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008). It does not apply to "a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Hukic* v. *Aurora Loan Servs.*, 588 F.3d 420, 435 (7th Cir. 2009). For example, in a sexual harassment case, each individual instance of offensive behavior may be too trivial to amount to actionable harassment, but over a period of time the cumulative effect is actionable. *Limestone*, 520 F.3d at 801 (citing *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). If the time at which "a reasonable person would realize she had a substantial claim" falls within the statute of limitations, then the plaintiff may allege as unlawful the entire course of conduct that created the cumulative effect. *Id.* On the

6

other hand, where successive acts independently support a claim for relief, the continuing violation doctrine does not apply. For example, in a case where the defendant embezzled hundreds of checks from her employer over an 85 month period, the continuing violation doctrine did not apply to the employer's claim for conversion, even though the pattern of wrongdoing as a whole resulted in a substantial loss of money for the plaintiff. *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005). Because each individual act of embezzlement was independently actionable, the plaintiff's claim "d[id] not depend on the cumulative nature" of the harm. *Id.* Therefore the plaintiff could only recover for those instances of embezzlement that occurred within the limitations period. *Id.*

Coleman's § 1983 claim is predicated on the allegation that she "was not given a meaningful opportunity to respond to the discipline, suspension, and termination alleged above because any hearings held were a sham," and therefore "Coleman was deprived of equal protection under the law." Amend. Compl. ¶ 72-73. If, as the court assumes, these allegations are true, then the pre-disciplinary hearing on April 10, 2007 and subsequent suspension on May 21, 2007 would be actionable independently of her termination. "It is undisputed that a suspension can constitute an adverse action" sufficient to support an employment discrimination claim. *Nagle* v. *Vill. of Calument Park*, 554 F.3d 1106, 1120 (7th Cir. 2009). As these events are independently actionable, Coleman's claim does not depend on the cumulative nature of the harm they caused. Therefore, the continuing violation doctrine does not link these events to the Coleman's termination.

## **CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss [#40] is granted in part and denied in part. By Coleman's concession, the court dismisses the following claims: Title VII claims against IDHS related to events that took place in 2006 (Count I), all Title VII claims against Gulli, Hammond, and Jankowski (Count I), and all claims against IDHS under §§ 1981 and 1983 (Counts II and III). The court also dismisses as time-barred the § 1983 claims against Gulli, Hammond, and Jankowski that are related to events occurring before June 15, 2007 (Count III). Defendants' motion to dismiss is denied with respect to § 1981 claims against Gulli, Hammond, and Jankowski (Count II). Defendants have fourteen days to answer the remaining counts in Coleman's first amended complaint.

Dated: November 10, 2010  Enter: _____

JOAN HUMPHREY LEFKOW
United States District Judge